REQUESTED BY: Banner County Attorney, Robert G. Simmons, Jr.
Is a receipt given by a depository bank adequate to satisfy the requirements of Neb.Rev.Stat. § 77-2318.0177-2320?
Which county official is responsible for insuring that depository banks comply with statutory requirements pledging assets pursuant to Neb.Rev.Stat. § 77-2318.01 or depositing it as specified in Neb.Rev.Stat. § 77-2320?
If a county treasurer is not satisfied, that an item offered qualifies as an item that can be accepted as security pursuant to state law, is the treasurer justified in refusing to deposit county funds in a bank seeking to become a depository?
Probably not.
County treasurer.
Yes.
In answering these inquiries it is helpful first to examine the statutory framework in which Neb.Rev.Stat. § 77-2318.01 and 77-2320 are found. Neb.Rev.Stat. § 77-2312 provides in part that "The county treasurer of each and every county in the State of Nebraska shall deposit, and at all times keep on deposit for safe keeping in the state or national banks doing business in the county, and of approved and responsible standing, the amount of money in his hands collected and held by him as such county treasurer. . ." However, in order for a bank to receive such deposits certain actions must be taken on behalf of the bank. In Neb.Rev.Stat. § 77-2313 it is prescribed that any bank located in the county may apply for the privilege of receiving the funds that the treasurer may deposit upon certain conditions and that it shall be the duty of the county board to act upon the application of such financial institution. Further in Neb.Rev.Stat. §77-2316 it is stated "For the security of the funds so deposited under the provisions of sections 77-2312 to 77-2324, the county treasurer shall require all such depositories to give bonds for the safekeeping and payment of such deposits and the accretions thereof. . ." In particular, the circumstance under consideration in this opinion is the circumstance in which a depository bank elects not to give the bond specified in § 77-2316.
Neb.Rev.Stat. § 77-2318 in part provides that "The county treasurer shall not have on deposit in any bank at any time more money than the amount insured by the Federal Deposit Insurance Corporation, plus the maximum amount of the bond given by said bank in cases where the bank gives a guaranty bond, except as provided in § 77-2318.01. . . ." The statute then goes on to provide additional limitations on the amount that may be deposited in any bank. Neb.Rev.Stat. § 77-2318.01 provides:
 The county treasurer may deposit in any bank of the county in which he is treasurer in excess of the amounts authorized in § 77-2318 when (1) the depository bank secures the deposits by pledge of the assets of the bank in the manner and within the limitations provided for county judges, county clerks, and clerks of the district court in § 77-2326.04 to § 77-2326.09, and (2) the same is approved by a formal resolution of the county board. (Emphasis added).
With this background in mind the first question that has been asked is whether or not a depository receipt satisfies the requirements of this statute. To answer that inquiry it is necessary to look at the manner of and limitations placed upon, the "pledge of assets" in §77-2326.04 to § 77-2326.09.
The only statute among § 77-2326.04 to §77-2326.09 to identify the items which may be pledged is § 77-2326.04(1). Neb.Rev.Stat. § 77-2326.04
provides in part "No deposits in excess of the amount insured by the Federal Deposit Insurance Corporation shall be made to accumulate in any bank designated as a depository bank, unless and until the appropriate official shall have required of and received from such bank as security for the prompt repayment . . . either a surety bond in form and with corporate sureties approved by formal resolution of the county board or in lieu thereof: (1) A pledge of bonds, notes, certificates of indebtedness, or treasury bills of the United States Government of any issue; . . ." (Emphasis added). Subsections (2), (3) and (4) of § 77-2326.04
identify other items which may be deposited with the enumerated county officials. However, § 77-2318.01 specifically requires in subsection 1 that deposits shall be secured by a "pledge of the assets" in the manner and within the limitations provided in the enumerated statutes. Therefore, only subsection 1 of § 77-2326.04 applies. Consequently, the only items that may be pledged are bonds, notes, certificates of indebtedness or treasury bills of the United States Government.
Additionally, Neb.Rev.Stat. § 77-2326.07 provides in part ". . . Bonds and securities pledged shall be delivered to and held by some Federal Reserve Bank or branch thereof or some other responsible bank or trust company within this state other than the pledgor, as designated by county board, with appropriate joint custody and pledge agreement in form approved by the said county board." Thus, there must be a pledge agreement in a form approved by the County Board. To determine what the pledge agreement that must be approved by the county board ought to contain, it is necessary to look at the purpose of the pledge agreement.
In reading the statutes § 77-2312 to77-2324 together, it appears as though the intent of these statutes is to provide a source of assets to cover deposits made by counties in the event of the failure of the bank in which the deposits are made. All banks into which county funds are deposited are authorized to have F.D.I.C. insurance coverage through membership in the federal reserve system. Neb.Rev.Stat. § 8-130. In fact, all state chartered banks have such insurance coverage. In the event of a bank failure the F.D.I.C. is routinely appointed as receiver. Neb.Rev.Stat. § 8-197. Thus, in order for deposits to be fully secured, it will be necessary to comply with state law as enforced by the F.D.I.C. as a receiver of any failed institution. A look at F.D.I.C. efforts to protect assets of insolvent banks against claims gives an indication of what will be necessary in order to assure that the intent of securing county fund deposits is achieved.
The county in attempting to receive the items specified in § 77-2318.01(1) and § 77-2326.04(1) in the event that a depository bank becomes insolvent, will be a claimant against the estate of the insolvent bank if the F.D.I.C. seeks to include those assets in the estate. As such, it has been noted that a claimant:
 ". . . may establish a right to recovery against the receiver in preference to the general pro rata distribution of assets "in situations where the facts are such that the court must say in equity that the property is not that of the bank but that of the claimant." (citation omitted). In this regard, the claimant "has a heavy burden of proof and unless he clearly and certainly identifies the fund he must fail." (citation omitted). Hibernia National Bank v. F.D.I.C., 733 F.2d 1403, 1408 (10th Cir. 1984). Thus, a county will have a heavy burden of proof in seeking to prevail on its claim that it should receive the items pledged."
The F.D.I.C. in a recent case relating to the failure of the Mount Pleasant Bank and Trust Company of Mount Pleasant, Iowa, took the position that entities purchasing Repurchase Agreements were not secured creditors because they failed to be secured in collateral pursuant to the state law of Iowa. In the Matter of the Receivership of Mount Pleasant Bank and Trust Company, Mount Pleasant, Iowa, Equity No. CL446-0882, District Court for Henry County, Iowa. In that case, in part, the F.D.I.C. argued that the claimants failed to have control over the entity holding items standing as collateral and thus there was no bailment. The position taken by the F.D.I.C. in that case was upheld by the trial court, presumably in part based upon its argument relating to the bailment. (Findings of Fact, Conclusions of Law and Directions as to Decree dated July 10, 1986).
In this instance the statute refers to a pledge. In Glissman v. Bauermeister, 146 Neb. 197, 19 N.W.2d 43 (1945), the court said "There is a clear distinction between a pledge and an assignment and passing title of an interest in an estate. `A pledge . . . is a bailment of personal property as a security for some debt or engagement, the property being redeemed on specified terms, and subject to sale in the event of default.'" Id. at 204. Additionally, "Under both the civil and the common law . . . it is essential to the validity of a pledge of personal property that either actual or constructive possession of the pledged property be delivered to the pledgee, or to someone as his agent or representative, or . . . to a third person agreed on as pledgholder." 72 CJS Pledges Pages 14-15 Section 16.
While this discussion has not been a comprehensive outline of all of the provisions that ought to be included in a pledge agreement some factors are apparent. First, based upon prior F.D.I.C. actions, it appears as though it would be necessary that control of the entity holding the items pledged must not lie with the bank making the pledge. Also the pledgholder must agree to protect the interest of the county and this should be set forth in a written agreement between the bank, pledgholder, and the county. A depository receipt by itself may not meet all of the requirements for the pledge agreement specified in these statutes under consideration.
Neb.Rev.Stat. § 77-2320 provides a different alternative to a depository bank when it does not wish to provide a bond. Pursuant to this section in lieu of the bond, the bank may deposit with the county clerk items which are enumerated in that statute. The question becomes whether a receipt deposited with the county clerk satisfies the requirements of § 77-2320. The answer is not entirely clear from the information provided, but the answer is probably that such a receipt by itself will not satisfy the requirements of § 77-2320. Undoubtedly, the provision of § 77-2320 requiring deposit of the enumerated items exists to ensure that the county has possession of the collateral. While it is not without question, it is believed that it would be valid to argue that constructive possession would be just as effective as actual possession to meet the intent of this statute. However, to effectuate constructive possession more than simply a receipt would be necessary.
Constructive possession might be effected as a result of a bailment. "The term `bailment' is comprehensively defined as a delivery of personality for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be." Peck v. Masonic Manor Apartment Hotel, 203 Neb. 308, 314, 278 N.W.2d 589 (1979). A depository receipt may not provide evidence of a contract of bailment, it may not specify the terms of the contract, it may not necessarily evidence that the bailee accepts the property under the conditions of the contract and will keep the property until authorized by the county either to return it to the depository bank or to turn the property over to the county, and the receipt may not necessarily require specific identification of the items held. Thus, it would appear as a minimum that an actual contract of bailment must exist and that the bailee acknowledge to the county that it is not under the control of the depository bank but that it will abide by the terms of the bailment contract which is made for the benefit of the county in holding the items specified in § 77-2320.
It has been asked which county official is responsible for insuring that requirements of these statutes are met. Neb.Rev.Stat. § 77-2312 provides that the county treasurer shall deposit funds in the banks set forth in that statute. Further, § 77-2316 in effect, requires the county treasurer to ensure that a bond is provided by the depositories in which the funds have been deposited. Additionally, § 77-2318.01 specifically provides that the county treasurer may deposit funds in any bank in the county when certain conditions are met. Thus, it is up to the county treasurer to ensure that those conditions are met. Additionally, while it is true that § 77-2320 allows banks to deposit with the county clerk the specified items in lieu of a bond, Neb.Rev.Stat. § 77-2323 states "Any treasurer, or any officer of a bank, who shall directly or indirectly violate or knowingly permit to be violated the provisions of § 77-2316 to 77-2320 so far as it relates to the deposit of public money in a bank shall be guilty of a Class IV felony." Thus, the responsibility is clearly placed upon the shoulders of the county treasurer to ensure compliance with the law under penalty of criminal sanctions.
It has also been asked if the county treasurer is not satisfied that a particular item that has been offered as security for a deposit of county funds qualifies under the appropriate statute, is the treasurer justified in refusing to deposit county funds in that depository bank. Because of the preceding indication that criminal sanctions could be imposed upon the county treasurer if the treasurer fails to fulfill the duties placed upon that office, then the treasurer would be justified in refusing to deposit funds in a proposed depository bank if the treasurer was not fully satisfied.
Sincerely,
ROBERT M. SPIRE Attorney General
LeRoy W. Sievers Assistant Attorney General